Filed 10/4/13  In re D.R. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.R., a Person Coming Under the Juvenile Court Law. | B247163 (Los Angeles County Super. Ct. No. CK91908) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.R., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Sarah Vesecky, Deputy County Counsel for Plaintiff and Respondent.

Appellant is the father of the infant "D.R." D.R. was born in December 2012. The juvenile court removed D.R. from the custody of mother and father after making findings pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b) and (j).[1]

Father appeals the juvenile court's jurisdictional findings made pursuant to section 300, subdivisions (a) and (b). He also contends insufficient evidence supports the trial court's dispositional orders requiring (a) D.R. be suitably placed with the maternal grandmother ("grandmother"), and (b) he be randomly drug tested and participate in counseling programs. We hold the jurisdictional finding was properly made and father's history of domestic violence and marijuana use constituted sufficient evidence to support the juvenile court's dispositional orders.

## I. THE HISTORY OF DOMESTIC VIOLENCE AND DRUG USE

Mother and father lived in a garage in the back of a home. Father's prior criminal history included arrests for possession of marijuana and driving without a valid license. When he was visited by a Children's Social Worker (CSW) in September 2012, he admitted he would test "dirty" for marijuana.

Less than two months prior to the birth of D.R., the court sustained a section 300 petition concerning the welfare of D.R.'s half-sister "E.S." Documents submitted during those proceedings indicated mother physically abused E.S.'s grandmother and 16-year-old maternal aunt in the presence of E.S., had psychiatric issues so severe that hospitalization was required, and had been under the influence of marijuana while in the presence of E.S. E.S. was declared a dependant of the court and reunification services were ordered. Mother's visits with E.S. were required to be monitored.

The CSW visited E.S. on December 12, 2012, while E.S. was at grandmother's home. Grandmother showed the CSW a notarized document signed by mother

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

authorizing grandmother to be the legal guardian of E.S. and the child to be born — D.R. Grandmother expressed a willingness to assume these new responsibilities.

Grandmother indicated mother was not attending her court-ordered programs because she had a black eye that resulted from father striking her. Grandmother was concerned about the domestic violence engaged in by mother and father. When mother checked into the hospital to give birth to D.R. she informed a social worker at the hospital that she had a black eye because she accidently ran into a cabinet.

On December 14, 2012, the CSW contacted two programs mother had been attending to address issues of domestic violence and anger management. Representatives indicated mother had stopped attending the programs and one of the programs intended to discharge her for noncompliance in three days. In addition, mother had not enrolled in individual counseling as required by the court's order and had missed two mandatory drug tests.

The CSW informed mother that D.R. was going to be detained due to concerns about domestic violence. Mother referenced her black eye and indicated father had not struck her and that it was the result of her accidental collision with a cabinet. D.R. was detained on December 18, 2012.

## II. THE JURISDICTION/DISPOSITION HEARING

The jurisdiction and disposition hearings were combined. Mother and father did not appear. The trial court took judicial notice of the court file and admitted into evidence a January 25, 2013, report prepared by the Department of Children and Family Services (DCFS). The DCFS report was based on the following information gleaned when an investigator interviewed mother, father and grandmother.

Mother denied engaging in physical altercations with father. She explained a cabinet once "fell down" and struck her near the eye but father was not home when the injury was sustained. Father's account was virtually identical, i.e., he was at work when

3

a cabinet fell and hit mother in the face causing a "small bruise." Father admitted he had "loud arguments" but said he "never put [his] hands on her."

Grandmother said she did not see the incident regarding the cabinet but that mother told grandmother the black eye was caused by father striking her. Mother admitted to grandmother that father had "hit her before." Grandmother recalled witnessing mother and father "shoving and pushing" each other. She indicated mother and father continue to argue and that mother told grandmother that father does not attend his programs and continues to drink and use drugs. Grandmother expressed a willingness to adopt both children.

Father and mother claimed they had attended counseling. Father said he was enrolled in parenting and anger management programs and was attending Alcoholics Anonymous and Narcotics Anonymous meetings. Mother said she completed parenting classes and had tested negative for narcotics. Both mother and father believed their relationship had improved.

On January 24, 2013, mother contacted the CSW and indicated she and father had separated. Mother was living with friends. She explained father was not attending his programs with regularity and was coming home intoxicated and smelling of marijuana. Mother requested grandmother be awarded custody of the children while mother completed her required programs.

DCFS provided documentation indicating: (a) father enrolled in a domestic violence program on January 10, 2013; (b) father enrolled in a parenting program on December 12, 2012; (c) mother enrolled in a domestic violence counseling program on August 30, 2012, and had attended three sessions; and (d) mother completed a 12-week parenting program.

The trial court found all allegations in the petition to be true. The court ruled it would be "contrary to the [child's] welfare" and there would be "a substantial risk of detriment to the safety and protection, physical and emotional well-being of [D.R.]" if the child were to remain in the home with the parents. D.R. was declared a dependent of the court and ordered to be suitably placed with grandmother. Father was ordered to comply

4

with a case plan that required:  seven random drug tests and, upon failure of any one test, a full drug rehabilitation program with random drug testing; anger management classes; and a domestic violence program.  He was permitted to have monitored visits with D.R.

## III.  DISCUSSION

### A.  Jurisdictional Finding

Father argues the evidence of domestic violence engaged in by him was insufficient and, therefore, the trial court erred by sustaining the allegations in the petition under section 300, subdivisions (a) and (b).  His position lacks merit.

"The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.)  "For jurisdictional purposes, it is irrelevant which parent created those circumstances.  A jurisdictional finding involving the conduct of  a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established.  [Citation.]  As a result it is commonly said that a jurisdictional finding involving one parent is '"good against both.  More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent."''" *(In re I.A., supra,* 201 Cal.App.4th at p. 1492, quoting *In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.)

Father does not challenge the jurisdictional findings concerning mother or the findings made pursuant to section 300, subdivision (j).  Accordingly, even if we were to find the evidence was inadequate to support findings related to father's conduct under section 300, subdivisions (a) and (b), the juvenile court's jurisdictional finding would remain intact. We decline to engage in the academic exercise of addressing the sufficiency of the evidence supporting the section 300, subdivisions (a) and (b) challenges.  We are not alone in this approach.  (See, e.g., *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2012) 211 Cal.App.4th 13, 22; *In re I.A.,*

5

*supra,* 201 Cal.App.4th at p. 1492; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 330; *Randi R. v. Superior Court* (1998) 64 CalApp.4th 67, 72.)

It is true that, under similar circumstances some courts exercise their discretion and reach the merits of a jurisdictional finding "[if] the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [Citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction.' [Citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762.) Father has not demonstrated any of these factors apply to his case.

The petition alleged father engaged in a "violent altercation" with mother when she was pregnant and struck mother's eye causing "bruising and swelling." This conduct was cited in support of jurisdiction under section 300, subdivisions (a), (b) *and* (j). But, father does not challenge the finding under subdivision (j). Thus, consequences from the findings concerning father's conduct would exist even if we were to conclude that the conduct did not satisfy subdivisions (a) or (b). Indeed, father makes no argument that the consequences of jurisdictional findings under subdivisions (a) or (b) differ in any respect from the consequences of the unchallenged finding, based on the same conduct, under subdivision (j).

## B. The Dispositional Orders

"The juvenile court has wide latitude in making orders necessary for the well-being of a minor. By statute, the court may make 'all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . .' (§ 362, subd. (a).) However, the same statute limits such orders to those that are designed to eliminate the conditions that brought the minor to the attention of the court. (§ 362, subd. (c).)" (*In re Jasmine C.* (2003) 106 Cal.App.4th 177, 180.)

In pertinent part, section 361, subdivision (c) prohibits the juvenile court from removing a child from his or her parents' custody "unless the juvenile court finds clear

6

and convincing evidence . . . : [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c); see also Cal. Rules of Court, rule 5.695(d).) "A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citations.]" (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, disapproved on another point in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.)

We review the juvenile court's dispositional orders for substantial evidence. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) The record is to be considered "in the light most favorable to the dependency court's order to determine whether it contains sufficient evidence from which a reasonable trier of fact could make the necessary findings by clear and convincing evidence." (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 441.)

The evidence demonstrated father struck mother while she was in the later stages of her pregnancy with D.R. and that there was a history of domestic violence between mother and father. Father had used drugs in the past and, just five days before the disposition hearing, mother reported father was not attending his programs with regularity, and was coming home intoxicated and smelling of marijuana. The court's order for suitable placement of D.R. with grandmother and the orders requiring drug testing, parenting classes, and counseling were supported by sufficient evidence. Father's attack on the credibility of grandmother does not persuade us otherwise. We "must defer

to the juvenile court on questions of credibility." (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 600, fn. 5.)[2]


IV.  DISPOSITION


The jurisdictional finding and orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KUMAR, J.[*]


We concur:


MOSK, Acting P. J.


KRIEGLER, J.

---

[2] Father briefly asserts he should "have been considered for release of [D.R.] to his care and custody under section 361.2 [, subdivision (a)]" — a provision that allows the child to be placed with a parent who did not reside with the child at the time the events arose that brought the child within the provisions of section 300 as long as it would not be detrimental to the safety, protection or physical or emotional well-being of the child. He has forfeited this argument for failing to raise in the juvenile court. (*In re John M.* (2013) 217 Cal.App.4th 410, 419-420*; In re A.A.* (2012) 203 Cal.App.4th 597, 605-606.) Nonetheless, section 361.2, subdivision (a) was inapplicable because (1) on December 18, 2012, mother indicated she lived with father; and (2) father had a history of domestic violence and drug use.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.